Amazon.com v. Amazon.com Last week when reading over the Supreme Court's opinion in Mayo, two words jumped out at me. Those two words were, in context. The Supreme Court used these words in discussing the previous decision in Diamond v. Deere. Specifically, the Supreme Court said, and this is on page 12 of the slip opinion in Mayo, it, namely the Supreme Court in Deere, nowhere suggested that all these steps, or at least the combination of these steps, were, in context, obvious, already in use, or purely conventional. The reason these words jumped out at me is because all of a sudden, Step 2 of Alice seemed to make more sense to me. Step 2 of Alice, now I know and understood, the question was not, are the steps set forth in the claim merely conventional in some context, but are those steps conventional? Are you conceding Step 1? Am I conceding Step 1? Yes. No. I'm just, but I'll explain how it ties in. It's odd you're starting with Step 2. Because this helped my understanding. To tell you the truth, Your Honor, I never understood the difference between Step 1 and Step 2 because the overall question is, does the claim, is it directed to a claim in the abstract, or I'm sorry, an idea in the abstract or an implementation of the claim. And it seems to me Step 2 is sort of a double check to make sure that the claim is directed to an implementation and not just the idea. And this in-context part helped me understand it because the question would be, if you find that there's an idea in Step 1 that the claims are directed to, under Step 2, are the steps in the claim conventional in the context of implementing that idea? In our case, it is specifically implementing that idea on a computer. And this goes back to the concerns raised about claiming an idea on a computer, that you're not just saying take this idea and implement it on a computer. It's just saying like claiming this idea. So the question is, when implementing that idea on the computer, in that context, are the steps set forth in the claim merely conventional? And here, that is something that the court did not look at. In our brief, we already talked about that. And I'll go back to Step 1. The court merely looked at each of the steps in Step 2 and said, each of these steps is just a conventional step used in computer programming somewhere. But the court did not look at the question, are these the steps that would be conventional in the context of implementing, taking this idea and implementing it on the computer? So it's just an additional reason why the court's Step 2 analysis is incomplete and wrong. Well, the claim describes a method, and it seems to me that it goes on and simply says implement this on a computer. What kind of computer are you claiming here? Your Honor, respectfully, the issue is not – let's say what the idea is. The idea the court identified in Step 1 is – No, let's stay with Step 2. You started with that. How are you implementing this method under Step 2? Implementing it in an unconventional way. In a way that is unconventional – You're using a computer. I'm sorry? You're using a computer to implement it. But the steps that are taken by that computer are unconventional in the context of implementing the idea. But the computer itself is not special. It's generic. It's just a regular computer. Of course it is. Everything that's – you know, it is not, as Your Honor pointed out, the invention is not a different computer. It's not a different network. You're not claiming the computer. Absolutely not. No, the invention – it is, in a sense, a way of using computers. It's a process pattern. You're not arguing an improvement over the generic computer. No, not at all. No, it – as a matter of fact, the computer is only one of the pieces of hardware that are used in the claims. I mean, it's also involved in a network and communications received on the computer. It's implementing the method. But it's not – the claim is not on making the computer run any faster or quicker or anything like that. It's a method of improving – for this invention, it was a method of providing communications using a computer. You argue that the improvement here is that it draws more viewers to your website. Yes. That's the improvement that you're claiming. That is the purpose that the claim is directed to. That is what it is seeking to achieve. The – whether it's an improvement, but the way that it does that is unconventional. And it uses – the steps implemented by the computer are implemented in an unconventional way. It's not the way that one of skill in the art would implement the idea of enabling communications between persons through an intermediary without revealing the home address, which is the idea that the court found under Step 1 that the claims were directed to. And I think that going back to this issue of whether a claim has to improve the operation of a hardware in a computer-related invention. And I think that that's something that defendants have always raised. But I have nowhere to see – if that was the case, then an Alice Supreme Court would simply have said software patents are not valid. All – anything that uses a computer, the only kind of computer-related software patents that are valid are those that change the operation of the hardware themselves. And that was never the case. It's similar that process patents in other cases don't improve the operation of the machine that is doing the processing. I think in the cases we talked about before here on the – from what I understood, the medicine cases or the pharmaceutical cases, there's no improvement in any machinery there either. All of these cases use existing machinery in a new way to produce a new result. And that's in our context. We are using computers in a new way to produce a benefit. And that benefit in our case was – Name me one information flow case, which is what this is, that has been found eligible using a computer to pass information or parse data or send data from one person to another. Tell me one of them that's been found eligible. Well – Because I can probably name about 20 that have been found ineligible that are awfully similar. Well, okay. Again, passing information, DDR holdings. Because it specifically said that it was improving the computer. Oh, no. I actually – and I've set forth the claim in DDR holdings in our brief. What in DDR holdings, it wasn't improving the computer. The benefit that it was conferring or the problem that it was addressing was retaining website visitors. That's specifically – the quote is set forth in the brief. There was no improvement in the operation of the computer. What it simply did is it made a website look like it came from somewhere else. That is, in essence, transferring data to make it look like something. But it made it look like you were still in the – I think it was the merchant's website when, in fact, you were not. And, therefore, it gave the impression when you wanted to come back to it that it helped promote visitors there because you kept being sent back to a place that you thought was one thing but it was something else. That was just transferring data from one webpage to another. It had nothing to do with the operation, the internal operation of the computer. It didn't improve memory in any way. It was pure information flow, in that case, information from one website to another or from memory to another webpage, which was then broadcast out by the computer. And, Your Honor, you're actually right. I was looking for that as well. The other thing I was looking at is – How is that – how do you find a similar type benefit? You said that the benefit of this method is to attract – To retain website visitors. Okay. Or increase traffic to the website. Where in the claims does it say that? Okay, now that's another – it's not that the claims have to say that. The claim is in DDR – The claims have to be directed to something other than – Right. The claims – I'm sorry. Where in the claims – have you claimed that? Have you shown that this method is intended to attract viewers to the webpage? Yes, that is set forth explicitly in the specification. In the section that describes – What about the claims? Where in the claims is this? It's not in the claims. But the method – in the specification, it talks about the method. And then it says the purpose of this method is to retain website visitors. The question in DDR holdings, it was the same thing. If you look at the claim in DDR holdings, it doesn't say anywhere in the claim that this is retaining website visitors. It just talks about putting out a website, which has the look and feel of another website. And there it didn't even say it in the spec. In DDR, the claims are directed to building, to creating a new type of webpage. Well, they were creating a webpage. Okay. But it didn't say that the benefit – There's no creation. There's nothing that's being built other than the use of an intermediary to pass messages back and forth. I disagree, Your Honor. What is being created is a different message. If you look at the claims, it specifically says that it's creating a modified email message. A modified email message is just like a modified webpage. It is changing the content of that email message to add an address that has the server's name in it. That's what it's doing. It's creating that new kind of email message that didn't exist before. That's not the message that comes in. It's changing that. Just like in DDR holdings, there's a webpage. And then when it's sent on to the screen of the user, information in that webpage is changed. That same thing is happening here. And here, this benefit of that it's done to promote repeat visits to the server's website, that language was put in when I wrote this claim in 1999. It's not a reaction to DDR holdings. They're trying to come back and say, oh, okay, actually our real intent was to do this. This is what happened at that time, and that's why we were doing it. And I've gone way over my opening. Okay. Well, we'll save the remainder for later. Okay. Thank you. Good morning, Your Honors. Heidi Keefe for Apelli. I think Your Honors have asked exactly the right question, where is this in the claim itself? It's actually nowhere in the claim. The benefit is nowhere in the claim, nor is any recitation of the website that is to be promoted, or visitors, or visitors to that website. In fact, in the appendix at page 142, during the hearing down below in front of the district court, the district court specifically asked whether or not it was in the claim. Appendix 142, which is page 7 of the transcript, starting at line 16. Okay. Can I ask then, where in the claims describing the 461 patent, does it state that the purpose of the claim is to do what you just described, the repeat visitors? What I'm reading it, it struck me the purpose was to allow this communication between doctor and whoever. You are saying that the real purpose is just so that everybody sees everymd.com over and over and over again, and that would form, from an advertising perspective, cause someone to want to go to that website. Continue on to appendix 143. Mr. Weyer answers, exactly. Now, in terms of saying in the claim, it doesn't say it in the claim. And so we have a case very analogous to the Berkheimer decision, where the supposed benefit of the claim is nowhere in the claim itself, and that was what was used in order to invalidate the independent claim. The only reason that a question was raised with respect to the dependent claims was that the inventive feature of lack of redundancy was specifically recited in dependent claim 4, which does not exist here at all. In terms of DDR, I think also DDR doesn't apply here. DDR was solving a problem unique to the Internet, going from one website by a visitor to a separate website, analogous to someone walking into Home Depot, and if you touched a Black & Decker saw, you'd be transported to a Black & Decker store, which doesn't happen in real life. The court in DDR said because it was an Internet-specific problem with a specific solution, which the claims themselves called out, they talked about the visitor, they talked about maintaining the look and feel so that the visitor felt like they were on the same site, nothing like that exists here. It's not like DDR. In fact, if anything, it's just like the secured mail case, where mail was brought into a mail server, the mail was read, rules were applied to the mail to see whether or not the address needed to be changed. If the rule was met, an address was changed to a distribution list, you had a new address, and you facilitated the communications that way. And finally, using the BSG case, very recently from your honors, in step 2, we have to take out the idea, the abstraction of either intermediate communication or, even as Mr. Weier suggests, that it would be somehow this branding. You have to take that out and look to whether or not there's anything else in the claim that makes it inventive. But here, email and generic computers are all that are left. Your friend was making an argument that that's not the standard, and as you know, he began with the words in context in the mail case to suggest that when you evaluate the inventive concept under step 2, you do include a consideration of the context in which we find it, which includes the abstract idea. Well, and here, your honor, the context in which we would find it still has to be in the claim itself. And the claim simply talks about email on a computer. And when we look to the specification, the only thing we learn is that email is old, and that's in the appendix at 38, column 1 lines 40 through 45, and that we're applying simply a generic computer, which is in the appendix at 39, column 3 lines 58 through 62, 43, column 12, lines 38 through 36, and appendix 44, column 14, lines 12 through 15. I think what he was trying to say is that you have to now insist on some other context about advertising or branding simply because of one line in the specification. But that doesn't exist in the claim and so isn't a context into which you draw this. The generic computer is still all that's being used. There's nothing inventive here, your honor, unless you have any further questions. Thank you. I appreciate your honor's time. Thank you very much. Just quickly, I think again I want to respond to actually another issue that came up, and that was the differences between the claims, and that the claims have different breadth and the court below only looked at claim one and said all the other claims are the same in essence. And specifically now, in context of implementing the idea on a computer, there are steps. You didn't bring up this argument in your first opening. It may be unfair for you to address it now. Oh, okay. Good point taken. Then I actually thank you. Unless you have any further questions, I'll just stand on. Thank you. We thank both sides. The case is submitted. That concludes our proceeding. All rise.